THIRD DIVISION
AUGUST 27, 2008

1-07-1204

| | | |
|---|---|---|
| US XPRESS LEASING, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 L 50817 |
| | ) | |
| THE DEPARTMENT OF REVENUE, | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiff, US Xpress, filed a complaint in the circuit court of Cook County against the defendant, the state of Illinois, for review of an administrative law decision that barred its claim for a refund pursuant to section 13 of the Illinois Motor Tax Fuel Law (35 ILCS 505/13 (West 2002)) (the Law). The circuit court of Cook County affirmed the administrative law decision. This appeal followed. On appeal, the plaintiff argues that it is entitled to a refund for diesel fuel consumed during off-highway idling pursuant to the Law. For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

The plaintiff, US Xpress, is an interstate motor carrier corporation domiciled in Oklahoma for the purposes of the International Fuel Tax Agreement (IFTA)[1]. The plaintiff operates commercial

_____

[1]"Under the IFTA, motor carrier owner-operators pay all their state fuel tax obligations quarterly to their base state, the state in which they are registered. The base state then transfers the appropriate funds to the taxing state, the state where the fuel tax liability was incurred. This system prevents owner-operators from having to make multiple payments to different states in which they operate. Illinois, as a taxing state, maintains IFTA fuel tax returns for only Illinois-based taxpayers." Owner-Operator Independent Drivers Ass'n v. Bower, 325 Ill. App. 3d 1045, 1049, 757 N.E.2d 627, 630 (2001).

motor vehicles throughout Illinois and the United States. Pursuant to IFTA, the plaintiff filed a quarterly motor fuel tax report with the state of Oklahoma and subsequently paid the state of Illinois taxes on all fuel consumed within Illinois. All of the plaintiff's vehicles are equipped with monitors that record how much fuel each vehicle consumes on and off the public highways. Between April 1, 2001, and December 31, 2002, the plaintiff consumed 9,685,750 gallons of fuel in Illinois. Of that total, 581,145 gallons of fuel were consumed while the plaintiff's vehicles were off the public highways and on private property, parked in the idle mode. Vehicles are generally parked in the idle mode while being fueled, while cargo is being loaded or unloaded, or to sustain the temperature of the cab.

On July 7, 2003, the plaintiff filed a refund claim pursuant to section 13 of the Law (35 ILCS 505/13 (West 2002)) with the Illinois Department of Revenue, seeking a refund of $124,946. This is the amount the plaintiff paid on the 581,145 gallons of fuel consumed by the plaintiff's vehicles while in the idle mode. The plaintiff moved for partial summary judgment arguing that the fuel consumed while idling off public highways was not subject to taxation. The administrative law judge disagreed. The judge explained that the Law provides for refund of motor fuel taxes paid when motor fuel is used for a purpose other than operating a vehicle upon public highways. Since there were no Illinois cases directly on point, the judge examined cases from the Indiana and Wisconsin courts to define some pertinent terms of the Law. Relying on Roehl Transport, Inc. v. Wisconsin Division of Hearings & Appeals, 213 Wis. 2d 452, 466, 570 N.W.2d 864, 870 (1997), the judge explained that operation of a vehicle on a public highway within the context of IFTA was much broader than mere propulsion down a highway, but rather included on-highway and off-

highway idle time. The judge also explained, relying on <u>Hi-Way Dispatch, Inc. v. Indiana Department of State Revenue</u>, 756 N.E.2d 587 (Ind. 2001), that idle time is when the engine of a motor vehicle is running, but the vehicle is not moving, so that fuel is being consumed while the vehicle remains stationary.

Ultimately, the judge found that a rational reading of the statute indicates that the prohibition of credit claims for idle time is directed to motor vehicles such as semi-tractors pulling trailers which are intended for operation on public highways. The judge explained that the prohibition is intended to bar motor vehicle operators from claiming credit for temporary idle time stops off public highways for refueling, sleeping or for any other purpose  The plaintiff subsequently filed a complaint in the circuit court of Cook County for administrative review of that ruling. The circuit court affirmed the administrative law judge's decision. This appeal followed.

ANALYSIS

On appeal, the plaintiff argues that the administrative law judge's decision misinterpreted the Law and therefore a tax refund is owed to the plaintiff for the taxes paid while its vehicles were in the idle mode within Illinois. The statute in question has not been challenged in this manner previously. Hence, the administrative law judge's review and reliance upon case law from neighboring states in which the issue has been reviewed.

Judicial review of an administrative agency's decision extends to "all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2002). The standard of review depends on whether the issue before the reviewing court is a question of law or fact or a mixed question of law and fact. <u>Elementary School District 159 v. Schiller</u>, 221 Ill. 2d 130, 142, 849

3

N.E.2d 349, 357 (2006). "An agency's conclusion on a question of law is reviewed *de novo*." Elementary School District 159, 221 Ill. 2d at 142, 849 N.E.2d at 358. Although the reviewing court is not bound by the administrative agency's decision, the agency's decision remains relevant where there is a "reasonable debate" about the interpretation and meaning of the statute. Elementary School District 159, 221 Ill. 2d at 142, 849 N.E.2d at 358.

"The most fundamental rule in statutory construction is to give effect to the legislative intent." Murray v. Chicago Youth Center, 224 Ill. 2d 213, 235, 864 N.E.2d 176, 189 (2007). The courts must construe a statute within its plain and ordinary meaning and may not alter its meaning contrary to the plain meaning adopted by the legislature. Murray, 224 Ill. 2d at 235, 864 N.E.2d at 189.

A claimant must prove its entitlement to any exemption, clearly and conclusively. Wyndemere Retirement Community v. Department of Revenue, 274 Ill. App. 3d 455, 459, 654 N.E.2d 608, 612 (1995). "In analyzing an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation." Wyndemere Retirement Community, 274 Ill. App. 3d at 459, 654 N.E.2d at 612.

At issue in this case is whether fuel consumed during off-highway idling by commercial vehicles that operate upon Illinois' public highways is exempt from taxes under section 13 of the Law. The plaintiff argues that the Law clearly grants the tax exemption for fuel consumed "for any purpose other than operating a motor vehicle upon [Illinois] public highways." The plaintiff contends that the language prohibiting a refund for fuel consumed in Illinois during idle time has no impact on fuel consumed on private property.

The Law imposes a tax on the privilege of operating a motor vehicle on the public highways of Illinois. Owner-Operator Independent Drivers Ass'n, 325 Ill App. 3d at 1048, 757 N.E.2d at 630. Section 13a of the Law imposes a tax on the motor fuel consumed on Illinois highways by commercial motor vehicles. 35 ILCS 505/13a (West 2002). The state of Illinois also facilitates a program that provides tax-free dyed diesel fuel to be consumed for any special or non-highway purpose. 35 ILCS 505/5 (West 2002).[2] Additionally, the Law may allow a purchaser to request a tax refund for taxes paid on undyed diesel fuel. In some cases it is not practical to use dyed diesel fuel for various purposes. In that case, the undyed diesel fuel may be purchased, tax-paid, and the purchaser may request a tax refund from the Illinois Department of Revenue. 86 Ill. Adm. Code §500.206, added at 24 Ill. Reg. 6918, eff. April 21, 2000.

Pursuant to section 13 of the Law, one may obtain a refund for taxes paid on undyed motor fuel used for any purpose other than operating a motor vehicle upon the public highways. 35 ILCS 505/13 (West 2002). We review at length section 13, which states in pertinent part:

"Any person other than a distributor or supplier, who loses

---

[2]On September 1, 2000, the state of Illinois implemented a dyed diesel fuel program which requires that all diesel fuel used for nontaxable, nonhighway purposes, contain red dye. The red dye is an enforcement identifier used during field audits and inspections. An end user customer may purchase tax-free dyed diesel fuel from a licensed distributor or supplier. The end user customer must provide the licensed distributor or supplier with personal and business identification and the purpose for the use of the dyed diesel fuel. The licensed distributor or supplier must then provide all of the dyed diesel fuel sales information to the Illinois Department of Revenue. The Illinois Department of Revenue conducts field audits and inspections to ensure the proper tax-free usage of dyed diesel fuel. End user customers that violate the usage guidelines by selling dyed diesel fuel or using it for an improper purpose are subject to fines and/or a felony conviction.

motor fuel through any cause or uses motor fuel (upon which he has paid the amount required to be collected under Section 2 of this Act) for any purpose other than operating a motor vehicle upon the public highways or waters, shall be reimbursed and repaid the amount so paid.

\*\*\*

Claims for such reimbursement must be made to the Department of Revenue, duly verified by the claimant (or by the claimant's legal representative if the claimant has died or become a person under legal disability), upon forms prescribed by the Department. The claim must state such facts relating to the purchase, importation, manufacture or production of the motor fuel by the claimant as the Department may deem necessary, and the time when, and the circumstances of its loss or the specific purpose for which it was used (as the case may be), together with such other information as the Department may reasonably require. *No claim based upon idle time shall be allowed*.

\* \* \*

For claims based upon taxes paid on or after January 1, 2000, a claim based upon the use of undyed diesel fuel shall not be allowed except (i) if allowed under the preceding paragraph or (ii) for claims

for the following:

(1) Undyed diesel fuel used (i) in a manufacturing process, as defined in Section 2-45 of the Retailers' Occupation Tax Act, wherein the undyed diesel fuel becomes a component part of a product or by-product, other than fuel or motor fuel, when the use of dyed diesel fuel in that manufacturing process results in a product that is unsuitable for its intended use or (ii) for testing machinery and equipment in a manufacturing process, as defined in Section 2-45 of the Retailers' Occupation Tax Act, wherein the testing takes place on private property.

(2) Undyed diesel fuel used by a manufacturer on private property in the research and development, as defined in Section 1.29, of machinery or equipment intended for manufacture.

(3) Undyed diesel fuel used by a single unit self-propelled agricultural fertilizer implement, designed for on and off road use, equipped with flotation tires and specially adapted for the application of plant food materials or agricultural chemicals.

(4) *Undyed diesel fuel used by a commercial motor vehicle for any purpose other than operating the commercial motor vehicle upon the public highways. Claims shall be limited to commercial motor vehicles that are operated for both highway purposes and any*

*purposes other than operating such vehicles upon the public highways*.

(5) Undyed diesel fuel used by a unit of local government in its operation of an airport if the undyed diesel fuel is used directly in airport operations on airport property.

(6) Undyed diesel fuel used by refrigeration units that are permanently mounted to a semitrailer, as defined in Section 1.28 of this Law, wherein the refrigeration units have a fuel supply system dedicated solely for the operation of the refrigeration units.

(7) Undyed diesel fuel used by power take-off equipment as defined in Section 1.27 of this Law.

(8) Beginning on the effective date of this amendatory Act of the 94th General Assembly, undyed diesel fuel used by tugs and spotter equipment to shift vehicles or parcels on both private and airport property. Any claim under this item (8) may be made only by a claimant that owns tugs and spotter equipment and operates that equipment on both private and airport property. The aggregate of all credits or refunds resulting from claims filed under this item (8) by a claimant in any calendar year may not exceed $100,000. A claim may not be made under this item (8) by the same claimant more often than once each quarter. For the purposes of this item (8), 'tug'" means a

vehicle designed for use on airport property that shifts custom-designed containers of parcels from loading docks to aircraft, and 'spotter equipment' means a vehicle designed for use on both private and airport property that shifts trailers containing parcels between staging areas and loading docks." (Emphasis added.) 35 ILCS 505/13 (West 2006).

The plaintiff contends that the Law does not prohibit its recovery of the tax refund for fuel consumed during off-highway idling within the state of Illinois, despite the clause that provides "[n]o claim based on idle time shall be allowed." The plaintiff argues that this clause is applicable only to vehicles idling on the public highways. It contends that fuel consumed in Illinois off public highways or on private property is not subject to taxation under the Law. The State argues that the Law clearly and unambiguously states that a claim for a tax refund based on idle time by the plaintiff's vehicles, within the state of Illinois, is not allowed. The State explains that section 13 of the Law sets forth specific uses for undyed diesel fuel that qualifies for a tax refund and it does not include refunds for commercial motor vehicles such as those owned and operated by the plaintiff within Illinois when those vehicles exit the public highways for refueling, cargo loading, or cab climate control.

Section 500.235(i) of Title 86 of the Administrative Code (86 Adm. Code §500.235(i), amended at 26 Ill. Reg. 9912, eff. June 24, 2002), elaborates on the exemption and states that "[t]he Department will approve claims for a tax refund only when such claims are based upon a showing that such motor fuel was used for *a nontaxable purpose* ***. *** Only claims that can be supported

9

by proof of the amount of motor fuel not used for a taxable purpose will be approved." (Emphasis added.)

In this case, we agree with the State that section 13 of the Law does not designate tax refunds for fuel consumed by commercial motor vehicles operating within the state of Illinois such as those owned and operated by the plaintiff, during off-highway idling. The plaintiff erroneously contends that the clause "for any purpose other than operating the commercial motor vehicle upon the public highway," includes a vehicle idling on private property. This interpretation is extremely narrow and is inconsistent with the Law and the intent of the legislature. When read as a whole, the Law imposes a tax on motor fuel consumed by by commercial motor vehicles while operating in Illinois. However, the legislature created exemptions from the tax for fuel consumed for special or nonhighway purposes. 35 ILCS 505/5 (West 2002). Section 13 of the Law offers a tax refund for fuel consumed "for any purpose other than operating a motor vehicle upon the public highways,"and sets forth enumerated purposes of consumption that determine eligibility for the tax exemption. 35 ILCS 505/13 (West 2002). These enumerated purposes are not specific *locations* of consumption, but rather specific *purposes* of fuel consumption.

It is clear that the legislature has based the tax exemption on the nontaxable consumption of fuel as it is defined by the Law and not merely the location of the fuel consumption. Section 500.235 of Title 86 of the Administrative Code (86 Adm. Code §500.235, amended at 26 Ill. Reg. 9912, eff. June 24, 2002), supports this interpretation by requiring that claimants seeking a section 13 tax refund must demonstrate how the fuel was consumed for a defined nontaxable purpose.

Under the plaintiff's interpretation, taxes paid on all fuel consumed by commercial motor

vehicles while operating in Illinois, but off public highways, is refundable. The plaintiff suggests that this interpretation is consistent with the Law, specifically the dyed fuel program that provides tax-free fuel for off-highway consumption. The plaintiff is clearly suggesting an extremely narrow interpretation of the Law without considering the consequences of such a narrow reading. As stated, the general purpose of the Law is to tax fuel consumed by commercial vehicles on Illinois highways.

Owners of vehicles that participate in the dyed fuel program, such as farmers that use tractors for farming, are granted a tax exemption based on the *purpose* of their fuel consumption. Farmers usually do not operate commercial motor vehicles of the type which are owned and operated by the plaintiff. To the extent that they use undyed fuel to conduct the activities of farming, the Law may provide an exemption to the taxes as outlined in section 13 of the Law. During oral arguments the plaintiff contended that dyed fuel could *never* be consumed on Illinois highways because fuel consumed while driving on the highway is *always* taxable. The plaintiff argued that if a farmer participated in the dyed fuel program and thereafter drove his tractor on a public roadway to reach his field on the other side of the road, he would be fined and taxed for consuming the fuel "on-highway." We disagree with the plaintiff's reasoning as this would lead to an absurd result, which is not within the legislative intent. Clearly, the Law seeks to grant tax exemptions for fuel consumed for nontaxable purposes as defined by the statute, consistent with the intent of the legislature, not the location of the fuel consumed.

The plaintiff's interpretation of section 13 would only forbid refunds for on-highway idling. Under the plaintiff's reasoning, commercial carriers would only be prohibited from seeking a refund for fuel consumed in Illinois when their vehicles sit idle in traffic. This is clearly contrary to the

11

overall purpose of the Law. The section 13 tax refund is available for fuel consumed in Illinois for nontaxable purposes. Nontaxable purposes are defined by the Law itself, the Administrative Code and review of the legislative intent. Thus, section 13 clearly and unambiguously prohibits receiving a tax refund for fuel consumed in Illinois by commercial vehicles while idling whether that idling takes place on a public highway or on private property. It is the purpose for which the motor vehicle is being used within the state of Illinois that dictates its fuel tax status.

We hold that the administrative law judge and the circuit court correctly found that the plaintiff was ineligible for a section 13 tax refund. For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GREIMAN and THEIS, JJ., concur.